Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, April 16, 2008 2:42:00 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY G. HRAPCHAK | ) | CASE NO. 07-1668 |
| | ) | |
| Debtor. | ) | Chapter 11 |

## MEMORANDUM OPINION

JP Morgan Chase Bank N.A. ("Chase"), seeks a declaration that rents assigned under a promissory note and deed of trust are not property of the bankruptcy estate. In the alternative, Chase seeks to prohibit Gregory G. Hrapchak (the "Debtor") from using its cash collateral. The Debtor seeks to use the rents to reorganize his financial affairs in bankruptcy.

The court held a hearing in this case in Clarksburg, West Virginia on February 29, 2008. At the conclusion of the hearing, the court took all matters under advisement, and the parties worked out an interim cash collateral stipulation pending this court's decision. For the reasons stated herein, the court concludes that the rents are property of the estate, and the court will schedule a further hearing on the Debtor's use of Chase's cash collateral.

### I. BACKGROUND

On Schedule A, the Debtor claims to have an ownership interest in seven separate parcels of real property, some of which contain more than one address. One of those parcels having multiple addresses is described by the Debtor as "906-908 Virginia Avenue; 425, 425½ Walnut Avenue;RR2 Barrackville; 222-224 Adams; 230 Adams; 219 Jefferson; 1907 Morgantown Avenue; 6.43 acres; 1104 Russell" (collectively, the "Property"). The Property has a stated value of $880,000, and is subject to two cross-

1

collateralized notes and deeds of trust in favor of Chase in the original amounts of $990,000 and $17,500. Chase states that the outstanding balance on the two loans is about $838,000.

The deed of trust securing the $990,000 March 28, 2005 promissory note contains the following language regarding the assignment of rents:

> Grantor presently assigns to Lender . . . all of Grantor's right, title, and interest in an to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.
>
> . . . .
>
> **ASSIGNMENT OF RENTS AND LEASES.** The following provisions relating to this Deed of Trust as an assignment of Rents and Leases are part of this Deed of Trust:
>
> > **License to Grantor.** Unless and until Lender exercises its right to collect the Rents as provided below, as so long as no Event of Default exists, Grantor shall have a license to (a) remain in possession and control of the Property, (b) operate and manage the Property and (c) collect the rents; provided that the granting of such license shall not constitute Lender's consent to the use of cash collateral in any bankruptcy proceeding. The foregoing license shall automatically and immediately terminate, without notice to Grantor, upon the occurrence of any Event of Default. . . . Any Rents that are collected by Grantor after the occurrence of any Event of Default shall be held in trust for the benefit of the Lender.
> >
> > **Grantor's Representations, Warranties and Covenants.** Grantor represents, warrants and covenants that: (a) Grantor has good title to the Leases and is entitled to receive the Rents, in each case, free and clear of all rights, loans, liens, encumbrances, and claims . . . (b) Grantor has the full right power and authority to assign and convey the Leases and Rents to the Lender; (c) Grantor has not previously assigned or conveyed the Leases and/or the Rents . . . (d) Grantor will not sell, assign or encumber or otherwise dispose of any of Grantor's rights in the Leases and/or the Rents . . . .
> >
> > **Lender's Right to Receive and Collect Rents.** Subject to the license granted to Grantor above, Lender shall have the right, at any time from and after the occurrence of any Event of Default, to collect and receive the Rents. . . .
> >
> > **Application of Rents.** Any rents received by Lender shall be applied against the Indebtedness (including Lender's costs and expenses) in such order or manner as Lender shall elect in its sole discretion.

2

. . . .

> **Lender in Possession.** Lender's acceptance of this Deed of Trust shall not, prior to entry upon taking possession of the Property by Lender, be deemed to constitute Lender a "lender in possession," nor obligate Lender to: (a) appear in or defend any proceedings relating to any of the Leases, the Rents of the Property; (b) take any action hereunder; (c) expend any money, incur any expenses or perform any obligation or liability under the Leases; or (d) assume any obligation for any deposits delivered to Grantor by any tenant and not delivered to Lender. Lender shall not be liable for any injury or damage to any person or property in or about the Property. Grantor indemnifies Lender and holds it harmless from all liability or damages which Lender may incur under any Lease and from all claims and demands which may be asserted against Lender by any reason for any alleged obligation on its part to perform any term of any Lease.

(Document No. 50, Ex. C).

Pre-petition, the Debtor defaulted under the Deed of Trust, and Chase's right to collect the rents under the assignment of rents clause ripened. On September 17, 2007, Chase sent a notice of default to the Debtor advising him of the Event of Default. Shortly thereafter, Chase began exercising its right to collect rents by sending letters to the Property's tenants directing them to pay Chase instead of the Debtor. On December 23, 2007, the Debtor filed his Chapter 11 bankruptcy petition.

## II. DISCUSSION

Based on the Debtor's pre-petition default under the deed of trust, Chase asserts that the Debtor's license to collect rents terminated and that it is now the full owner of the rents from the Property. Consequently, Chase asserts, the rents, and the right to receive the rents, are not property of the Debtor's bankruptcy estate under 11 U.S.C. § 541(a), and cannot be cash collateral for purposes of § 363(e) on the basis that the Debtor's estate has no interest in the rents. In turn, the Debtor argues that the assignment of rents clause in the deed of trust is not absolute, but is only given as security. This means that his bankruptcy estate retains an interest in the rents, and, therefore, the rents are subject to the rules concerning the use of cash collateral.

Whether an absolute assignment of rents in a deed of trust removes the rents from being property of the bankruptcy estate is an issue that has created a split in the case law. This split stems from the United

3

State's Supreme Court's decision in *Butner v. United States*, 440 U.S. 48, 55-56 (1979), where the Court held that federal courts could not create an equitable security interest in favor of a lender with respect to rents collected by a debtor when the lender had not complied with applicable state law procedures for perfecting its lien rights in the rents. As explained by the Court, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* at 55.

Relying on this admonition, the Court of Appeals for the Third Circuit in *Commerce Bank v. Mountain View Village*, 5 F.3d 34, 37 (3d Cir. 1993), gave the same treatment to an assignment of rents clause as it believed that clause would have received under applicable state law. In holding that the rents at issue were not property of the debtor's bankruptcy estate, the Third Circuit reasoned: (1) applicable Pennsylvania law followed the title theory where the mortgage is considered a conveyance in fee simple to the creditor; (2) if the owner is in default, the mortgagee may enforce the mortgage provision that conveys rents by peacefully entering the premises and taking the profits until the debt is paid; and (3) no prohibition existed under Pennsylvania law to the enforcement of an absolute assignment of rents clause. *Id.* at 38. By sending pre-petition notice to the tenants informing them that it would be collecting the rents the Bank obtained constructive possession of the property, and, therefore, obtained title to the rents. *Id.* at 39. *See also In re Century Investment Fund VIII, L.P.*, 937 F.2d 371, 379 (7th Cir. 1991) (enforcing the terms of an absolute assignment of rents on the grounds that the contract of assignment was only susceptible to one interpretation); *Federal Deposit Ins. Corp. v. International Property Management, Inc.*, 929 F.2d 1033 (5th Cir. 1991) (recognizing that absolute assignments are generally a "legal fiction," but, based on controlling Texas law, the court gave effect to the language of the contract to find an absolute assignment of rents); *In re JP Realty II, Inc.*, No. 302-15286, 2003 Bankr. LEXIS 1719 at *9 (Bankr. M.D. Tenn. June 5, 2003) (concluding that the language of the absolute assignment of rents, and the event of a default, prohibited the rents from becoming property of the bankruptcy estate and therefore the rents were not cash collateral).

On the other hand, courts and commentators criticize the above cases to the extent that they elevate form over substance. For example, in the case of *In re Foundry of Barrington Partnership*, 129 B.R.

4

550, 556-57 (Bankr. N.D. Ill. 1991) the court debunked the creditor's assertion that it had an absolute assignment of rents, reciting that it did not matter whether the creditor called the arrangement an "'absolute assignment' or, more appropriately, 'Mickey Mouse'" because the court viewed the actual arrangement to be a security interest issue. Professor Forrester lists six reasons why courts like *Foundry of Barrington Partnership* are correct in concluding that an absolute assignment of rents in the context of a mortgage loan transaction is really a grant of a security interest:

> First, an absolute assignment of rents is given in connection with (and only because of) the related mortgage loan. Second, the borrower is typically permitted to collect rents prior to default. Although the borrower may be required to apply rents to pay for operation and maintenance of the property and to pay debt service, the borrower's use of excess rents is not restricted. Third, the lender is not entitled to collect rents until after a default under the terms of the mortgage loan. Fourth, the rents that the lender collects must be applied to the indebtedness or for expenses related to the mortgaged property. The lender cannot use rents to give its stockholders a dividend, to give its employees a raise, or to redecorate its offices. Fifth, the borrower retains the risk of nonpayment of rents by the tenants. If a tenant fails to pay rent, the debt is not reduced. Finally, the absolute assignment of rents terminates upon payment in full of the debt. After the debt is paid, the "lien" on rents must be released, and the borrower may collect them unencumbered by any obligation to the lender. All of these factors point to the fact that the absolute assignment is in fact a security interest.

Julia Patterson Forrester, *Still Crazy After All These Years: The Absolute Assignment of Rents in Mortgage Loan Transactions*, 59 Fla. L. Rev. 487, 513-14 (2007); *see also In re Allen*, 357 B.R. 103, 111, 13 (Bankr. S.D. Tex 2006) (concluding that the language: "This assignment of rents constitutes an absolute assignment and not an assignment for additional security," did not – based on the facts of the case – constitute an absolute assignment); *In re Lyons*, 193 B.R. 637, 644 (Bankr. D. Mass.1996) ("To borrow a concept from tort law, but for the loan transaction, the Debtors would not have assigned rents to the Bank. No independent consideration was given for the assignments. The fact that the assignments are conditioned upon default and will terminate upon satisfaction of the debt indicates that they are merely additional security for the loan, and not an absolute transfer of the Debtor's interest in the rents to the Bank."); *In re Bethesda Air Rights Ltd. Partnership*, 117 B.R. 202, 204-209 (Bankr. D. Md. 1990) (characterizing an "absolute assignment of rents" as a security interest under Maryland law); *Restatement*

5

*(Third) Property (Mortgages)* § 4.2, Reporter's Notes, cmt. a (1997) ("The use of 'absolute assignment' terminology by the foregoing courts and statutes creates needless confusion and is rejected by this section. None of the cited cases involve an outright sale or transfer of the substantive right to the rents. Rather, the assignment in each instance was intended to represent security for an obligation and not to confer an absolute ownership of the rents on the mortgagee.").

A well-settled maxim of equity is that "the particular form or words of a contract, agreement, conveyance, or transaction are not important if the spirit or intention of the parties can be determined." 27A Am. Jur. 2d *Equity* § 117 (2007). In West Virginia, courts have a long history of applying this maxim by ignoring the label applied to a transaction by the parties in favor of classifying the substance of the transaction. For example, in *Huntington Publishing Co. v. Caryl*, 377 S.E.2d 479, 483 (W. Va. 1988), the Court determined that, in tax matters, the "actual rights and duties established by the . . . transactions are controlling" and not the label attached to the transaction by the taxpayer. Likewise, in a dispute over whether a contract was one of sale or lease, the Court stated:

> The name given to the transaction, or even the form of the instrument, can not change its character. In determining the nature of the contract, courts will look to its substance and real purpose rather than its form name.

*Baldwin v. Van Wagener*, 10 S.E. 716, 717 (W. Va. 1889) (recharacterizing a "rental" contract to be a contract of sale).

Moreover, federal bankruptcy courts are courts of equity with an independent ability to examine the substance of a state law property interest. *E.g.*, *Young v. United States*, 535 U.S. 43, 50 (2002) ("[B]ankruptcy courts . . . are courts of equity and 'apply the principles and rules of equity jurisprudence.'") (citation omitted); *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 722 (1985) ("[S]tate law controls in determining the nature of the legal interest . . . in property," thereafter, the consequences of that property right is a matter of federal law); *Butner*, 440 U.S. at 55 ("Property interests are created and defined by state law. Unless some federal interest requires a different result . . . ."); *In re Guardian Realty Group, L.L.C.*, 205 B.R. 1, 4 (Bankr. D.D.C. 1997) ("Federal law will determine the substance of Beal's state law rights at issue here, *i.e.*, whether they constitute a mere security interest, or instead, ownership depriving the estate of any interest in the rents such that the rents are not 'property' of the estate for

6

purposes of 11 U.S.C. § 541.").

Regarding the federal interest in the characterization of an absolute assignment of rents clause in the context of a mortgage loan transaction, the determination of whether rents are "owned" by the mortgage lender or are property of the estate subject to a cash collateral order is an important one. In most cases, almost no hope of reorganization exists if there are no funds to pay for the operation and maintenance of the property. *E.g.*, Forrester, 59 Fla. L. Rev. at 521-22 ("If rents are unavailable . . . almost no hope of reorganization exists . . . . This result defeats the policies behind the Bankruptcy Code and Chapter 11, [and] is simply an injustice."). Thus, there is a public policy concern, consonant with the reorganization purpose of Chapter 11 of the Bankruptcy Code – and with the theory that Chapter 11 is a debt collection device whereby value is maximized for the benefit of all creditors (as opposed to just one) – that disfavors absolute assignment of rent clauses. *E.g.*, *Toibb v. Radloff*, 501 U.S. 157, 163-64 (reiterating that a central theme of Chapter 11 is that the "debtor's estate will be worth more if reorganized under Chapter 11" and that "Chapter 11 serves the congressional purpose of deriving as much value as possible from the debtor's estate."); *International Property Management, Co.*, 929 F.2d at 1036-37 ("For public policy reasons, courts are reluctant to construe an assignment of rents clause as absolute. A borrower typically expects to have a chance to negotiate informally after experiencing financial difficulties. . . . Texas, for public policy reasons, requires especially clear evidence that the parties intended to create such an assignment.").

Concerning the "absolute assignment" of rents in this case, the court makes the following observations: (1) the absolute assignment of rents is given in connection with the related deed of trust securing the note and no evidence exists that the absolute assignment is given as independent consideration for any other act of Chase; (2) the Debtor was permitted to collect rents before the happening of an event of default, and the use of the rents collected by the Debtor was not restricted by Chase; (3) Chase was not entitled to collect rents until after the happening of an event of default; (4) the Debtor's assignment of rents is given to secure the payment of the indebtedness and the performance of all obligations under the note and deed of trust; any rents received by Chase are to be applied to the indebtedness under the note; (5) No provision in the note or deed of trust exists that forgives the Debtor from making a payment to Chase in the event a tenant fails to pay rent; (6) in the event that Chase does receive rents, the right to collect those rents terminates in the event the Debtor pays off the amount due under the note and deed of trust; (7) in

7

addition to the language purporting to grant an absolute assignment of rents, the deed of trust states that Chase also has a security interest in the rents; and (8) the note provides for the Debtor to acknowledge that it is secured by "any Related Document" that is executed in connection with the Indebtedness, which would include the absolute assignment of rents clause. These eight observations are simply inconsonant with a true "absolute assignment" of rents.

Based on these observations, both West Virginia law and the court's exercise of its own equitable powers compel the same result. Although labeled by the parties as an "absolute assignment of rents," Chase has no interest in collecting those rents other than as security for its loan to the Debtor. Consequently, the court concludes that the right to collect rents is given as security and the rents themselves constitute property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) of the Bankruptcy Code.

### III. CONCLUSION

The court will deny Chase's motion to the extent it seeks a declaration that the rents from the Property are not property of the Debtor's bankruptcy estate, and will set a further hearing on Chase's motion to prohibit the use of cash collateral. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.